Good morning, Your Honors. May it please the Court, my name is Thatcher Stone, and with my co-counsel Hal Huell, we represent the Frequent Flyer, Rabbi Benjamin Ginsberg, in this appeal against Northwest and Delta. This case is on de novo review before this Court, based on a 12b-6 civil rule order, the District Court of the Southern District of California, dismissing with prejudice the Rabbi's breach of contract claim based on the covenant of good faith and fair dealing. Let me stop you right there. It isn't completely clear to me what this claim is. Is it a breach of contract claim on one hand? Is it a breach of the implied covenant of good faith and fair dealing on the other? Or is it somehow both? I think it's somehow both, in all fairness, Your Honor. The World Perks Agreement in paragraphs 7 and 8 had a series of what Minnesota law calls sole discretion clauses, or clauses where the airline could make up its own mind about deciding what to do vis-a-vis membership in the program. So under the program, flyers are encouraged to fly with Northwest and accrue the contract rights under the program, which they can convert into tickets. What language is in the agreement that makes it a contract? There are conditions that have to be met and conditions that may be exercised, but they're not mandatory either way. Which conditions is Your Honor referring to? I'm not following you, I'm sorry. The conditions of proper usage of flying, all of those things? Yes, all of those things. You pay for the flight when you buy your ticket. Correct. And they offer to keep track of the number of flights you make and the mileage you've traveled, and will make awards based on that. Correct. And that's the agreement, but they also have a termination clause.  If there's any abuse at all from the airline's perspective, they can terminate it without fault, right? That's correct, Your Honor. Okay, and that's what they've done. No, that's not what they've done, Your Honor, because if you look at the conditions, the conditions in the contract are trading or breaking the rules with respect to non-transferability of the miles and the benefits. And the program also encourages users of the program... Let's use the exact language now as for termination. It's their sole right, isn't it? It's their sole right. Okay, and they've exercised it. And they've exercised it. Is that the end of the case? No, that isn't, Your Honor. Okay. Because under the Iron Rule of Law, as referred to by Carl Llewellyn, or as more temporarily by Bob Scott and people at Yale, the most normative term of every contract since Moses came down with the Decalogue is that people who get into contracts together will treat each other fairly and will not take advantage of them. And in this instance, the rabbi aversed in his complaint that he followed all the rules, that he did everything he was supposed to do. The difficulty here is we're dealing not with iron rules but with federal preemption. And the Supreme Court has indicated that as long as what you're talking about is what the airline has undertaken itself, then a breach of contract claim is not preempted. But I'm having trouble understanding why your theory doesn't enlarge or enhance what Northwest stipulated to itself. Because your theory is it's not sole discretion or sole judgment. It needs an explanation or it needs something else. Well, I think the answer to your question, Judge Reimer, is in footnote 5 of the Llewellyn's decision, where Justice Ginsburg explained that what was contemplated by the enactment of law, as opposed to interpretive rules that judges and lawyers use every day to figure out what's in a contract, is a grouping of words. And I'm reading directly now from footnote 5. Well, I know. But you have to agree that your theory of the good faith in government would simply rewrite the sole judgment clause into one that says, well, in your judgment, if you give a reason, that is acceptable to me. No, I don't think that's what we're urging upon the court, Your Honor. What is it then? What we're urging upon the court is that when the rabbi entered into this agreement with the airline, which included a sole discretion clause, he never expected that they would take all of his miles away because he did exactly what they told him to do, which is complain when the service was lousy. Well, but that's what we're getting back to what I asked you earlier. This is not a breach of contract claim anymore. That was dismissed in the district court, and that's not before us. The only thing that's before us is the breach of the government of good faith and fair dealing. Is that right? That is correct. And so that's above and beyond the contractual rights. And I think Judge Reimer is correct. You're trying to alter this. I'm sorry. You're trying to alter this clause. I don't think we're trying to alter the clause at all. I think if you look at footnote five, in the Woolens case, Justice Ginsburg said the types of things that were preempted come from the word series, and I'm reading from footnote five on page 229, law, rule, regulation, standard, or other provision. Furthermore, the oral argument during the Woolens decision, Justice Kennedy specifically asked the Solicitor General, wasn't the view of the United States in their view of preemption that the restatement and the rules of offer acceptance and other issues were preempted? And Ms. Pillai responded, no, that those rules were crucial interpretive rules, and as Cipollone teaches, the enforcement of a contract is not the same as the enforcement or enactment of state law. Well, the Woolens case didn't deal with the covenant of good faith and fair dealing. No, but the question arose. But it didn't deal with the covenant of good faith and fair dealing, which is above and beyond the contractual relationship. Well, I don't think it's above and beyond because the restatement is clear, and Minnesota law is clear that every person who signs a contract agrees to fulfill that contract with good faith and not to turn the screws. That would not necessarily be true of every state in the Union, which is also what the position of the Solicitor General was. I'm having trouble hearing the judge. Isn't that true of every state in the Union, which is what the position of the Solicitor General was? Yes, this is the iron rule of laws, as Cipollone described it. But not every state recognizes this kind of covenant that you're talking about. Well, we did a 50-state search, Judge Reimer, and I'm not aware of any state that has rejected Section 205 of the restatement. And again, this is the restatement. The restatement is a tool we all use every day. If we can't use the restatement like they did in Woolens, there was nothing in the contract in Woolens to tell American Airlines how to conjure damages. In fact, they made this statement. It would be helpful if you were just saying, 25 words or less, exactly what the covenant that you claim to have been breached is. The covenant is as stated in the restatement. No, in this case, how are you going to show breach? What is the breach? We are going to show that Northwest,  terminated Rabbi Ginsberg's contract rights, which were remarkably valuable for their own sole purposes, which were, in effect, we believe, single-handed and not in good faith, because they were about to enter into a merger. And we believe the evidence will show, and we pled this in paragraph 39 of the complaint, that it was reported in the press that the charges against the performers of the merged company would show an unusually large number of frequent fire miles as a charge against the new entity. And to what body of law would you look to support your good faith covenant problem? All the Minnesota cases. Minnesota cases. And if you were in Illinois, you would look to what? To Illinois cases. And if you were in Pennsylvania, you would look to what? So all of these jurisdictions would differ somewhat with respect to what the content of the covenant of good faith and fair dealing is. Well, this is not an instance where we're using the covenant to either seek punitive damages or extraordinary damages. But every state has its own approach to this particular covenant. And so now you're opening up the airlines to 50 different interpretations of what this covenant of good faith and fair dealing is. This is another step past just enforcing specific contractual obligations. That's the way I see it. Okay. Well, the way the appellant sees it is that when they signed the contract, Northwest understood what Minnesota law was, knew that in the words of the restatement, every person who signs a contract voluntarily assumes, and I believe Justice Ginsburg used that same lexicon in footnote 8 and in the Woolens decision to explain that everybody who signs a contract, including with reference to the restatement, is bound by the interpretive rules that judges every day use to interpret. In the Woolens decision, there was no contract provision for damages. American Airlines argued, as appellee does here, the damages aren't covered in the four pages of the agreement, therefore it's preempted. We've got to look at something else. And Justice Ginsburg said, no, that's wrong. We're going to use the interpretive rules that judges normally use, and we'll get it right, looking beyond the contract. Well, that's all we're suggesting is the rule here. We're not, as in other cases, suggesting, and we believe the Cherus case and the West v. Northwest case in this circuit are precedent that this circuit recognizes that in an aviation context, a contract may be possessed of a covenant of good faith and fair dealing. What does West v. Northwest hold and require us to do, in your view? This case decided in 1993. Right. It was pre-Woolens. I think it was prescient. And I think the case requires the court to look at sole discretionary actions of a contract actor and make a determination whether he fulfilled expectations of the parties or he did something selfish and that the other party would not assume. Should we also consider the reasons given for termination by the airline? Yes, but the reasons given for termination by the airline in the letters included in the record, Your Honor, do not conflict with any of the conditions in the contract. So that's the nub of the case. I think the nub of the case is really whether the restatement is an enactment of state law within the meaning of Woolens footnote 8 and footnote 5. And I think on examination it clearly is not. And I think if you examine what the ADA was intended to do, it intended to put the CAB out of business and let people like you and I, who make contracts with the airlines, come to our own agreements. And so it doesn't foster the vision of both the Khan-CAB administration putting the CAB to bed and the Reagan promise of small government that we tell people go ahead and make contracts in lieu of the government telling you what to do and then figure out ways not to enforce them. Let's assume for a second that we were to decide this case against you and tell you no, there's preemption here, you simply cannot pursue your client's problems in court. Where would you go and how would you go about trying to vindicate what you claim has been done to your client? I'm sorry, I didn't mean to cut off. That's quite all right. I'm sorry. That's exactly what Justice Ginsburg said is the problem in loans, which is why she didn't preempt the contract. She said if you have a whole body of law, and I realize I'm over my time. That's quite all right. You're answering my question. I understand. I just wanted to make sure you understood. I won't throw you out for answering my question. Justice Ginsburg said, you know, if you look at the history, this is all about letting people contract to make a market instead of government telling people what the market is. So therefore, you have to have a court to enforce those agreements. Otherwise, the whole idea doesn't make sense. If you look at ERISA, when Congress passed ERISA, they created a whole body of law, including administrative law judges and review panels and all the people necessary, including funding, to take those cases out of the state system and put them all in the federal system with respect to a special regime. That didn't happen here. I believe that didn't happen because if you read the House report and the congressional review, what the House Subcommittee on Transportation chairman was saying is roots, prices, and service. That's what the CAB used to do. Okay, we're going to open this up to the world, and we are now going to let people contract and do whatever they want. Now, all of a sudden, people can't do whatever they want because their contracts are being stymied, when, in fact, that was the goal and idea of. Is this a long way of telling me you have no place to go with your client's problem? No. The judge below in her first order told us that we could go to FAA and DOT, and they have routinely and regularly denied to have anything to do with frequent flyer agreements because they consider them part of interstate and intrastate law. Is there anything in writing or some authoritative document from them saying that's the case, we don't have anything to do with this stuff? I am only familiar with letters that have been written to me privately from the DOT and FAA saying this is their position. Do they cite any authority for that position that they take? Yes, Congress in establishing DOT and FAA did not say, thou shalt create a court of redress for those people who are preempted, so to speak, by the Airline Deregulation Act. Justice Ginsburg says in the Willans decision, we adopt the position of the solicitor general who argued before us as to preemption. The Airline Deregulation Act doesn't let people go to the federal courts, doesn't let people go to FAA or DOT, doesn't let them go anywhere. There's nowhere special for them to go. They're stuck in the courts, state or federal, and if we believe in what the ADA regime is, we should step back from Morales and Justice Scalia's decision that says you should read this expansively. She uses the words in the decision, we need to take a middle ground, because there's no place for these people to go. You appear to have accepted the proposition that your breach of contract claim doesn't work. I'm not sure yet if it works or not. I'm not trying to be tricky, Your Honor. I'm being sincere. I'm not sure yet if it works or not in the court we've selected. I'm being honest. I'm not sure. I hope you're always being honest. Well, I'm always being sincere. Thank you, Counsel. We appreciate your help. I had asked to reserve a few moments. We've asked you a lot of questions. We'll let you reserve some time. I appreciate that very much. Fine. We'll hear from the other side. Good morning, Your Honors. May it please the Court, Judith Nemcic on behalf of the Pelley's Northwest Airlines and Delta Airlines. The District Court's orders granting defendants' motion to dismiss and deny Plaintiff's motion for reconsideration should be affirmed in all respects. As Your Honors have recognized, the Wolins case controls here, and Plaintiff's claim for breach of the implied covenant of good faith and fair dealing clearly enhances or enlarges the obligation. You know, somebody once told me that any time somebody says clearly, what follows is not. That was my good friend, Judge Hall, who's no longer with us, unfortunately. But, I mean, this is not Wolins. This is an extension of Wolins, if anything. It is to a degree, Your Honor, but the covenant of good faith and fair dealing has been recognized as an implied theory of liability. It's an application of state law that supplements the party's obligations. The District Court recognized that it does not appear ex nihilo, out of nothing. It's not part of the contract's terms. But it does not fit the series of descriptors in footnote 5. On footnote 5 or 8, I'm sorry, Your Honor, I didn't think. Footnote 5. Let me just go to that. I had looked at footnote 8 previously, which is what he had focused on in his briefs. The phrase having the ban on enacting or enforcing any laws relating to rape suits and services does. That's always the description of what law, rule, regulation, standard, or other provision can out. Correct. Correct. And I don't think, though, this footnote takes away from the general holding, though, that you can't have a term that enhances or enlarges the party's obligations under the contract. We haven't shed light on what those words mean. This is not a regulation or, you know, some state law provision that it's a common law principle. It is a common law principle, and the courts have pretty uniformly held that any common law state law claims qualify as laws that seek to regulate or have the force and effect of law. Well, look, here it seems to me it's a conundrum. Northwest enters into a contract knowing that it's going to be governed by Minnesota law. It knows when it enters into a contract in Minnesota that it's got some baggage along with it, which is a good faith covenant. And so why in doing that does the Northwest not basically undertake for its own benefit, because it wants to enter into a contract, a good faith obligation? Well, for one, Your Honor, I think Northwest Frequent Flyer Program, I'm not sure they know for sure what law is applying to every single passenger, and I think any time you interpret the contract, you have to do so in the context of the ADA preemption. And I think as I'm trying to understand your question again, though, if I'm not answering it. Look, Minnesota attaches a covenant of good faith and fair dealing automatically, as it were, to every contract that's going to be governed by Minnesota law, right? Correct. Okay, so when Northwest enters into a contract knowing that Minnesota law will govern, arguably it is assuming that obligation as part of the written contract that it enters into, because it applies to every contract. I see what you're saying. However, as the district court found below, Your Honor, it's really what you're doing is rendering the breach of contract claim the same as the good faith cause of action here. And in fact, the district court also found that under numerous, like California and even Minnesota, the good faith doctrine still cannot expand contracts beyond their explicit terms. The court cited to Larson v. Vermillion State Bank, and there are other Minnesota courts that have also held likewise. If you're right, where does Mr. Ginsburg go if he believes that he's been wronged by your client? It seems there's nowhere that he can go. Is that right? He's left out, Scout? That might be the case, Your Honor. That is the case as far as I can tell. Well, you know, these are the terms and conditions of the fluke and flyer programs. The airlines need to be able to enforce and act on them. He could try and do the Deceptive Trade Act claim with the DOT. Those claims are heard by the DOT. But I would say that he could also try and write to the airline again, possibly. But it is within Northwest's discretion. And I think, Your Honor, you have to understand, too, to require this type of implied covenant would really be untenable for the airlines. They have, in many of the fluke and flyer programs, as I think many of us know, they can unilaterally change the terms and conditions. They can change the number of miles required and what the blackout dates apply. And if you impose this on every time the airline changes the program, it's going to frustrate our ability to manage it. Maybe you can help me understand what we do with the case of West versus Northwest Airlines. I'm sure you've read that case. That case was remanded to us by the Supreme Court. And Dorothy Nelson held that the claim against the airline for breach of covenant of good faith and fair dealing was preempted under the FAA to the extent that it sought punitive damages but was not preempted to the extent it sought compensatory damages. Isn't that a square holding that binds us in this case? I don't think so, Your Honor. Why not? I think that case, number one, it's pre-Wolins, and you have the directive from the Supreme Court that you can't, in this situation, this implied covenant of good faith and fair dealing will be enhancing or enlarging Northwest's obligations. I also think the West case, they looked at it and found it was too tenuously related to the rates, routes and services. Its holding was not that the claim, the state law claim cannot, it didn't really address whether it exceeds the obligation to the airline. I also think there's numerous district court decisions following West that have had no problem finding that. So district courts can overrule the Ninth Circuit? No, Your Honor. Not in our. I think also in that case there wasn't a breach of contract claim. I have a feeling, the way it was interpreted, it seems as if they were substituting their good faith claim for the breach of contract. Do you have anything else? No, Your Honor. That's it. Thank you, counsel. We'll let you respond. Thank you, Your Honor. Your Honor, so I think the most important point to be made this morning, particularly by Judge Trott, your reference back to West v. Northwest. I think if you look at that case and Shiras and footnote 5 and Justice Ginsburg's and the plurality of opinion of the Supreme Court and Wolin's saying we need to take a step back from Justice Scalia's overarching preemption, Justice Scalia should overarch? Well, that's how she sort of refers to his decision in Morales, in all fairness. And the court agreed and he joined in that opinion. And so I think the word from the Supreme Court is that there isn't sort of a knee-jerk reaction for preemption, number one. Number two, whether I'm later proven right or wrong about one or two causes of action, there will only be one recovery. Because as we've made clear this morning, the claim for the breach of the covenant of good faith and fair dealing is one only for compensatory damages. Because the rabbi expected when he signed up that if he followed the rules, they wouldn't take his miles away from him. And it is really that simple. If you were to prevail here, go back to the district court, on what causes of action will you be able to proceed? Well, I think as we've asked in our prayer for relief before this court, we've asked that you reverse and remand the last decision, striking the claim for breach of the covenant of good faith and fair dealing. Where does that leave your contract claim? I think that leaves our contract claim intact. Because the statute hasn't run, so we can either replete it. But you'll have to replete it. Yes, Your Honor. We will have to. There's no shenanigans. Okay. I would just like to make one last comment, if I may. We never like shenanigans. Go ahead. I didn't think so. I want to be clear that when something interpretive is used by a judge, such as yourself, to interpret what two people put down on paper, that no one can figure out what it may have meant in light of subsequent circumstances. They are entitled to use tools. They're entitled to use the restatement, Black's Law Dictionary, the ALR, and everything else one might think of. If you hold for the appellee in this case, you not only go against what I believe the message in Woollens and the holding in Woollens provides, you would reverse the decision in West v. Northwest and ostensibly in Charas, and you would be saying that let's all throw our Blacks, ALRs, and restatements out the window because we can't use them anymore because if it's not in the four corners of the agreement, the other party is sunk. That's what Justice Ginsburg in Woollens said is not acceptable. American Airlines tried that in the Woollens case. They said, if you send us back on remand to figure out what the damages are, there's nothing in the contract, so you're preempted again. And Justice Ginsburg said, not so fast, buddy. We're going to allow the court below to use the regular things the judges know how to use and get the calculation of damages right, even though there's no cookbook or provision of liquidated damages in the contract. Thank you, counsel. I have one for you. Your position that all of the conduct of the claimant was within the filed tariffs of the airline? That's correct, Your Honor. All he did was complain. Every time that he complained, it was within the airline's filed conditions with the aviation. I have read the tariff, Your Honor, and there was no prohibition against complaining. In fact, we're blessed. I'm talking about conduct. I don't care about it. I want to know, did he complain to them every time about conduct? I don't understand. It affected his flying. As I understand it, he'd buy a ticket at the last minute and say, I've got to get an upgrade, things like that. Right. And you say that's covered by the contract? The World Perks Program allows a frequent flyer to buy a ticket on full flights. It's provided for in the agreement, and we pled that in the complaint below. And you agree in every case he will be upgraded from coach to first class? At the airline's decision, Your Honor. They decide. But because he spends literally tens of thousands of dollars a year flying with a carrier. I don't care how much he spends. I'm just talking about one passage. Okay, but I'm just trying to make a very small point, which is. And where's that in the contract? Where's what in the contract? That he will be reimbursed because they can't put him in first class when he's asked for it. It's in the terms of the elite coverage. I can't cite it to you. If you want me to show you the exact provision, I will. If you want to give me the time, I'll be happy to do so. Or if you prefer, I'll be happy to send it to the court this afternoon by letter. We'll look at it. We'll look at it. Okay. All right, counsel, thank you very much. The case has been well briefed, well argued. We'll get you an opinion as soon as we can. Thank you very much for your attention this morning. Thank you.
judges: Beezer, Trott, Rymer